Plaintiff alleges he was injured on his construction job on January 14, 1994 when he accidently dropped a 2 x 10 "header" that struck his arm. It is well documented that he was seen by Dr. Classen by about 4:00 p.m. that day for a swollen arm that developed "sudeck atrophy". The defendant's co-owner and three of his employees testified that plaintiff was working on chimneys that day right up until they were paid and left work at 3:00 p.m., that this work was too strenuous for plaintiff to have done after he suffered the injury, and that these tasks did not involve handling a header. Plaintiff suggests that they are confused about the day of those work activities. The Deputy Commissioner resolved the conflict in the testimony of the witnesses in the belief, "based upon the testimony and records of Dr. Classen, [that] plaintiff [did] not report to Dr. Classen that he had sustained an on-the-job injury." (Finding of Fact #4).
The records and testimony of Dr. Classen do not support the inference that the injury to plaintiff's arm did not occur on the job. When, on cross-examination, it was pointed out that he had not recorded an account by the plaintiff of the time and place of the injury, he testified, "If he did tell me ["when this injury had occurred"] I didn't write it down . . . he didn't tell me that it happened at work, but I think I probably presumed it, but I didn't write it down." Dr. Classen had seen the plaintiff the previous July for a sore left shoulder and neck after a 2 x 4 fell on him "while at work for D R Construction." When plaintiff saw him on January 14, 1994, Dr. Classen added his notes onto the second page of the medical record of that incident. He wrote that, "Patient comes in today complaining of pain in his left forearm. A 20 to 30 lb. header fell and struck him in the left forearm. He has had swelling and pain in it, particularly if he tries to move his thumb." The doctor had the arm x-rayed, put it in a short arm cast, recommended ice and elevation, prescribed pain medicine, and set a follow-up appointment.
Defendant also attacked plaintiff's credibility in their contentions to the Deputy, repeated in the brief to the Full Commission, with two unpersuasive allegations based on the transcript of his statement to an adjuster, although it is not clear that the Deputy Commissioner was influenced by these. It is contended that plaintiff "told Ms. Riley . . . that he had no prior injuries." Actually, he told her of his 1992 hip injury that resulted in surgery and a workers' compensation claim. This construction worker did not raise the sore shoulder and neck for which Dr. Classen had seen him, that resulted in no lost time or claim or serious treatment. On p. 8 of this statement, after speaking of actions "to clear the bench off" where he was cutting headers, plaintiff's next statement was transcribed as telling of plans to "take some of uh the benches inside the house, or apartment". Defendant alleged that the is literally correct — rather than of being a typo for off — and that this proved he testified inconsistently.
As the misperception of the doctor's testimony and notes clearly affected the credibility determination, the Full Commission must re-evaluate the evidence.
Whether the crew worked on the chimneys on that day or the day before, it seems clear that plaintiff was injured on the day he saw Dr. Classen, January 14. While the doctor was not asked directly about this, he commented that the arm was swollen and tender, but not yet discolored from bruising when he saw the plaintiff. Both Mr. Carter and the claimant testified that he was paid and left work about 3:00 p.m. on January 14. Plaintiff testified that he went by the bank and cashed his check, and then to the food place where his fianceé worked. She testified that when she saw his arm ("so weird and so gross — it was so swollen") she called the doctor's office and was told to hurry him over because it was a quarter till four and they did not accept patients after 4:00. Dr. Classen confirmed that their "last regularly scheduled appointment" is 3:45, although his practice sometimes sees patients as late as 7:00, based on "the type of injury and the availability of help to treat it", etc. Thus there was a very narrow time frame during which plaintiff could have been hurt off the job. When plaintiff reached the doctor's office (by 4:00, he testified), he told his treating physician that his arm had been struck by a header — an unlikely risk of going from his workplace, by way of a bank and a food place, to the doctor's office. "Statements made by a patient to a physician for the purposes of diagnosis and treatment" are considered "inherently reliable" in light of "the patient's strong motivation to be truthful" under such circumstances, justifying an exception to the general hearsay rule. N.C. Gen. Stat. § 8C-1, Rule 803(4), and official commentary. In light of the surrounding circumstances, the greater weight of the evidence supports the plaintiff's claim that he was inured at work.
Consequently, upon review of all of the competent evidence of record with reference to the errors assigned, the Full Commission hereby REVERSES the Opinion and Award of the Deputy Commissioner and makes the following FINDINGS OF FACT:
The following were entered into by the parties at the hearing before the Deputy Commissioner as
STIPULATIONS
1. At all relevant times, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between plaintiff and defendant at all relevant times.
3. Defendant was a duly qualified self-insurer with Consolidated Administrators, Inc. as the servicing agent.
4. The parties stipulated that the plaintiff's medical records from Dr. Charles Classen were authentic and genuine and could be received into evidence without any further identification or proof.
****************
Based upon all the competent credible evidence of record, the Full Commission makes the following
FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a thirty-six year old male who began employment with defendant-employer as a carpenter in May of 1993.
2. Plaintiff contended that on January 14, 1994, while lifting a 2x10 header at defendant's construction site, the header fell and hit his left arm and hand. Plaintiff further contended that he immediately reported his alleged injury to David Carter, his supervisor.
3. The plaintiff's version of the alleged incident was contradicted by defendant's witnesses who testified that plaintiff did strenuous work putting on chimneys on the day in question, without difficulty or complaint, and did not handle headers for this task. Plaintiff testified that the chimney work was done the day before. Dr. Classen, whom the plaintiff saw the afternoon of January 14, 1994, recorded that plaintiff stated his arm injury was caused by a header falling on it.
4. The plaintiff did suffer a compensable injury on January 14, 1994, as a result of an accident occurring while engaged in the course and scope of his employment with the defendant.
5. As a result of this injury, plaintiff was incapable of earning the same wages he had earned before his injury in the same or any other employment after January 14, 1994 until April 12, 1994. Plaintiff earned an average weekly wage of $255.00 at the time of his injury, rendering a compensation rate of $170.00 per week and is entitled to receive temporary total disability benefits for 13 and 2/7 weeks, or $2,258.57. Dr. Classen testified in his deposition that he would have released the plaintiff to return to work as of his review of the plaintiff's condition on April 12, 1994, and plaintiff was in fact, working in April, 1994. There is no convincing evidence that plaintiff was unable to earn pre-injury wages in some employment after April 12, 1994.
6. When seen by Dr. Classen's partner, Dr. Pate, on January 20, 1995, it was not clear whether plaintiff would suffer permanent partial disability as a result of the injury.
****************
Based on the foregoing findings of fact, the Full Commission makes the following additional:
CONCLUSIONS OF LAW
1. Plaintiff is entitled to temporary total disability benefits and medical compensation as a result of an injury by accident sustained in the course and scope of his employment on April 14, 1994. N.C. Gen. Stat. §§ 97-2(6); 97-25; 97-29.
2. The plaintiff's "healing period", within the meaning of N.C. Gen. Stat. § 97-31, had not concluded during the period of record, and the question of whether plaintiff suffered permanent partial disability remains open for later determination.Crawley v. Southern Devices, Inc., 31 N.C. App. 284, 289,229 S.E.2d 325 (1976); N.C. Gen. Stat. § 97-31(13).
3. Plaintiff earned an average weekly wage of $255.00 per week, rendering an compensation rate of $170.00 per week. N.C. Gen. Stat. § 97-2(5).
****************
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Defendant shall pay plaintiff temporary total disability benefits for the period January 15 through April 12, 1994 at the rate of $170.00 per week. Said benefits having accrued, defendant shall pay same in one lump sum, subject to the attorney's fee hereinafter approved.
2. Defendant shall pay plaintiff's expenses for medical compensation necessitated by the injury of January 14, 1994, including the charges of Kinston Orthopaedic Associates and plaintiff's pharmacy bills, when the same have been submitted to defendant's claims administrator and approved in accordance with the rules of the Commission.
3. A reasonable attorney's fee, equal to 25% of the cash compensation herein awarded, is hereby approved for plaintiff's counsel of record.
4. IT IS FURTHER ORDERED that if plaintiff seeks benefits for permanent partial impairment of his arm and the parties do not otherwise agree, plaintiff shall obtain an evaluation by his physicians and file a request for hearing within 120 days of the filing of this Award.
5. Defendants shall pay the costs due this Commission.
 S/ ___________________________ J. RANDOLPH WARD COMMISSIONER
CONCURRING:
S/ ___________________________ COY M. VANCE COMMISSIONER
S/ ___________________________ BERNADINE S. BALLANCE COMMISSIONER
JRW:md 2/11/97